KNOWLSON *v.* PIEHL.

1. CONTRACTS—WAIVER OF TIME OF PAYMENTS.

   Where a party to a contract fails to furnish money at the times required, and the other party afterwards asks for and receives money, the failure to comply strictly with the terms of the contract as to time of payments is waived.

2. SAME—BREACH—DIRECTING VERDICT.

   Plaintiff agreed to furnish defendant with certain materials, and $1,400, upon written statements showing that such money was required to pay for labor and material in constructing a limekiln on defendant's land. Defendant agreed to sell to plaintiff the entire output of the limekiln for one year at a certain price per barrel, and allow five cents a barrel to apply on advancements. If plaintiff failed to perform his part, defendant could terminate the contract by paying the sums advanced; if defendant failed to perform, plaintiff could demand repayment after 90 days. Plaintiff furnished all materials required, and money at different times amounting to $1,300, but intimated on two or three occasions that he was not prepared to furnish all the money. Defendant afterwards asked for and received other advances, but did not furnish the written statements. When the kiln was about complete, defendant asked for a statement of the account, which was furnished, and he shortly afterwards sold out without making provision for the payment of plaintiff. *Held*, in an action to recover damages for breach of contract, that a verdict was properly directed for plaintiff.

3. SAME—MEASURE OF DAMAGES.

   The provision in such contract relating to defendant's failure to perform was intended to provide that the indebtedness should become due at once in case of his failure, but not to furnish a measure of the further damages the plaintiff would suffer.

4. SAME.

   A provision in such contract that "the output of the kiln shall be at least, outside of the months of November, December, January, and February, 20,000 barrels each year," does not exclude the output of these months from defendant's obligation to furnish the entire output for a year, and a recovery of the profit on 24,000 barrels, the amount plaintiff was compelled to purchase elsewhere, is not excessive.

Error to Emmet; Shepherd, J. Submitted April 22, 1902. (Docket No. 99.) Decided May 19, 1902.

*Assumpsit* by Abram B. Knowlson against David Piehl for the breach of a contract to furnish lime. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*M. F. Guinon* and *Halstead & Halstead*, for appellant.

*C. J. Pailthorp*, for appellee.

MONTGOMERY, J. This is an action to recover damages for the breach of a contract. Judgment was rendered for the plaintiff under the direction of the circuit judge. Defendant brings error.

The defendant had a contract right in land suitable for the manufacture of lime. Plaintiff had, prior to November 25, 1899, advanced to the defendant $800, to aid him in constructing a limekiln. On the date last mentioned a further contract was made between the parties, which provided, in effect, that defendant should construct and finish by January 1, 1900, a suitable and proper limekiln, with the capacity of an output of 125 barrels of merchantable lime per day; that he should sell to the plaintiff, at the kiln, the entire output of said limekiln for one year from January 1, 1900, at the price of 46 cents per barrel, and at 30 cents per barrel in bulk; that the advancements so made by the plaintiff should be repaid by deducting 5 cents on each barrel of lime purchased. The plaintiff, on his part, undertook to furnish at least $1,400 in cash, in amounts as required by defendant, upon the defendant furnishing written statements showing that such money was to pay for labor and material entering into the construction of said kiln. He also agreed to furnish certain brick and fire clay. The contract contained a further clause as follows:

"It is further covenanted that, if first party [plaintiff]

fails to perform his part of this contract, second party can immediately terminate the same, paying to first party the sum so advanced by him, with interest, and paying for the said material and transportation; and if second party [defendant] fails to perform his part of the contract, first party can demand such payment within ninety days, and that thereafter the said indebtedness shall be due and payable."

It is contended by the defendant that the circuit judge erred in holding that the plaintiff had fully performed his contract. The undisputed testimony shows that the plaintiff furnished $1,300 in cash, and such materials as were required, making a total of $2,019.22. It appears that the plaintiff, on two or three occasions, wrote defendant letters which indicate that he was not prepared to send all the money required. But, after these letters were written, the defendant, it would appear, asked for and received other moneys of the plaintiff, and it must be assumed that the failures to comply strictly with the contract as to the time of payment were waived. Furthermore, it does not appear that defendant ever furnished to plaintiff the statements required by the terms of the contract, showing that the money was intended to pay for labor and material entering into the construction of the kiln, or for wood, and the cutting thereof, or other purposes necessary in the construction and operation of the kiln. Indeed, this language would import that the $1,400 would not all be required for the construction of the kiln, but that some portion of it, at least, would be reserved for use in the operation, as, for instance, sufficient to furnish a supply of wood, or for other purposes necessary in the operation. That defendant did not understand that the contract had been broken is apparent from his letter of January 24th, in which he writes the plaintiff, not asking for more money, but saying:

"I am very near ready to start my kiln, and would like to have you, at your earliest convenience, send me a full statement of money and all material that I have got from you up to date, so I may know just how we stand up to

date.   It will take me about a week or two to get ready. I have got to get a few logs in yet, to complete my shed floor, and a few castings for my car."

In response to this the itemized statement was sent as requested, but on February 3d defendant wrote plaintiff that he had sold out his property, and it transpired that he had sold the property without making provision for fulfilling his contract with plaintiff.   We think the circuit judge was right in directing a verdict for plaintiff.

The remaining questions relate to the question of damages.   It is contended by defendant that the contract furnishes its own measure of damages, which is the repayment, with interest, of the amount advanced.   Reliance is had upon a portion of the language above quoted, namely:

"If second party fails to perform his part of the contract, first party can demand such payment within ninety days, and thereafter the said indebtedness shall be due and payable."

We do not think this provision was intended to provide a measure of damages in case of a breach by the defendant.   Under the terms of the contract, the indebtedness to plaintiff would not grow due except from day to day, and until the production of the kiln was sufficient to repay the indebtedness at five cents per barrel.   The evident purpose of this provision was to make the indebtedness incurred payable instanter in case the defendant failed to perform his contract.   It has no bearing upon the question of the further damages which the plaintiff would suffer by a breach of the contract.

It is further contended that the judgment was excessive, in any event, for the reason that the contract contained an agreement that "the output of said kiln shall be at least, outside of the months of November, December, January, and February, twenty thousand barrels each year," and that the effect of this was to exclude the output of November, December, January, and February from the defendant's obligation to furnish the output of the kiln to

plaintiff.  We do not so construe the language.  By another portion of the contract defendant was required to furnish the entire output of the kiln to the plaintiff at the price agreed upon.  By this provision he guarantees that the production shall be 20,000 barrels each year, exclusive of the production of these months, and whatever the production in these months might be the plaintiff would be entitled to receive under his contract at the price agreed upon.  The evidence does not show conclusively how much lime would be produced during these months, but it does show that the production would be at the rate of 125 barrels per day; and the circuit judge limited the recovery to the profit on 24,000 barrels, being the amount which plaintiff was compelled to purchase elsewhere.  We think defendant cannot complain as to the amount.

The judgment will be affirmed, with costs.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.