NATHAN ELSON & COMPANY, APPELLANT, V. H. BESELIN & SON, APPELLEE.

FILED APRIL 6, 1928. No. 25167.

*Stout, Rose, Wells & Martin* and *Decker & Golden,* for appellant.

*Andrew M. Morrissey* and *Weaver & Giller, contra.*

Heard before Goss, C. J., Eberly, Dean, Good and Howell, JJ., and Broady, District Judge.

Broady, District Judge.

This action was brought by the plaintiff to recover the balance of a running account for cigars sold to the defendant, to which the defendant counterclaimed for damages from the plaintiff for breach of an oral contract making defendant the exclusive sales and distributing agent for the plaintiff in a specified territory. Defendant admits the plaintiff's account. Hence, the only issues in the case are upon the defendant's counterclaim, and, as presented by argument and briefs of counsel, are: (1) That the contract, as pleaded and proved, upon which the counterclaim is based, is void for want of mutuality in that no binding obligation on either party is shown. (2) That the court erred in permitting an expert accountant to testify as to the contents of defendant's books of accounts from his personal examination without having the books before him in court. (3) Waiver of default in payments by performance thereafter. (4) Duration of the agreement which is indefinite as to time.

Plaintiff is a manufacturer of cigars in Chicago and the defendant a wholesale jobber and, prior to making the contract with plaintiff, was a manufacturer of cigars in Omaha. In the summer of 1921 plaintiff, desiring to secure the defendant to handle its line of cigars, began negotiations toward that end, and the defendant placed a few trial orders with the plaintiff, and in November of the same year defendant took on an exclusive selling agency for two brands of plaintiff's cigars in a territory of Nebraska and part of western Iowa. By cross-petition the defendant alleges that the parties, at that time, entered into an oral contract substantially as follows: That plaintiff agreed to give the defendant the exclusive sale agency in the territory, mentioned for the sale and distribution of two brands of cigars known as Ben Bey and Illiad, conditioned that the defendant would discontinue its cigar factory in Omaha and also discontinue handling all competing brands of cigars, push the sale of plaintiff's cigars and increase its force of salesmen; and that defendant would have to sell at least $60,000 worth of cigars per year in order to hold the agency. Defendant alleges full performance of the above conditions on its part, in that it dismantled and discontinued its factory and the brand of cigars that it had been making, also stopped jobbing certain other cigars which were deemed as competitors, employed an extra traveling salesman and generally centered their efforts at selling plaintiff's cigars; and claim they sold more than $120,000 worth of plaintiff's cigars a year until in March, 1923, at which time the plaintiff canceled the defendant's agency without cause.

Plaintiff then brought this action to recover the balance for goods sold in the sum of $8,040.80. This amount included accounts from December 15, 1922, to March 5, 1923. The defendant counterclaims for damages for such breach of the agency contract. Plaintiff, by reply, denies the facts pleaded in the counterclaim and claims defendant breached its contract in that it did not make payments as required or sell sufficient cigars to satisfy plaintiff. Ver-

dict and judgment were for defendant on its counterclaim, after deducting the amount of plaintiff's claim, which was admitted by the defendant, and awarded defendant $8,018.36. Plaintiff appeals and is the appellant in this court, and will be hereafter called the plaintiff.

First. As to the first question, that the contract of agency is wanting in mutuality. The plaintiff contends that the contract, if there was such an agreement, did not bind either party to buy or sell any specific quantity of goods and, therefore, the agreement was lacking in mutuality, or, as otherwise stated, it was a promise for a promise calling for a will, want or wish performance on the part of the defendant and therefore unenforceable and cites many cases in support of that theory. There can be no dispute of that general rule of law, if applicable. *State v. Holcomb*, 46 Neb. 612. The question is, is it applicable to the circumstances of this case. Only confusion could arise from an attempt to discuss the various cases dealing with this question. We think the law governing is clearly and well stated in 6 R. C. L. 686, sec. 93. It is as follows:

"As a promise by one person is merely one of the kinds of consideration that will support a promise by another, mutuality of obligation is not an essential element in every contract. Therefore, to say the least, language which is susceptible of the interpretation that consideration and mutuality of obligation are two distinct elements lacks precision. Consideration is essential; mutuality of obligation is not unless the want of mutuality would leave one party without a valid or available consideration for his promise. The doctrine of mutuality of obligation appears therefore to be merely one aspect of the rule that mutual promises constitute considerations for each other. Where there is no other consideration for a contract, the mutual promises must be binding on both parties. But where there is any other consideration for the contract, mutuality of obligation is not essential."

Also: "If mutuality, in a broad sense, were held to be

an essential element in every valid contract, / * * * there could be no such thing as a valid unilateral or option contract." 6 R. C. L. 687, sec. 94.

As above noted, "where there is any other consideration for the contract, mutuality of obligation is not essential." If defendant dismantled its factory and discontinued all competing cigars, as we assume it did, that certainly was a detriment to the defendant which would independently supply a consideration for the contract. While, under the terms of the agreement, the defendant may not have been obligated to buy any specific quantity of cigars, there was a sufficient consideration passing from the defendant which would bind the plaintiff to accept orders from the defendant sufficient to meet its needs so long as the defendant met the other yearly requirements.

The question whether the defendant, under the evidence, obligated itself to buy $60,000 worth of cigars per year was determined by the verdict. And, too, the plaintiff requested an instruction which, in effect, submitted the question of mutuality to the jury, which was given by the court.

Second. Plaintiff contends that the admission of oral testimony of an expert accountant as to the contents of defendant's books without first producing the books for which plaintiff claims it made timely demand was reversible error, and cites *Bee Publishing Co. v. World Publishing Co.*, 59 Neb. 713. That case holds that similar evidence was not the best evidence, and that the other party had the right to cross-examine the witness with the books before him. In the case at bar the testimony brought out by the witness went to the question of the damages sustained by the defendant. The plaintiff claimed that without this testimony there is a total lack of evidence as to the damages sustained. The testimony was a summary of the business done by defendant, as made by him from the defendant's books and records, and particularly the total sales, income and cost of overhead of that business, both on a yearly and monthly basis, apportioned to trans-

actions with the plaintiff separate from its other business. There was no definite objection to the testimony until after the witness had told his story, and at the close of his examination in chief a general objection to the whole was made on the grounds of no foundation and that the source of witness' investigation had not been authenticated as required by law or produced or made available to the plaintiff. Witness had previously, without objection, testified to sales per month by defendant of plaintiff's cigars. In the examination of another witness it appears that all of defendant's records, which plaintiff's counsel had previously called for, were in court and were turned over to plaintiff's counsel, and records not called for could have been secured by subpœna *duces tecum*. Therefore, in view of the condition of the record and the absence of timely motion and objection, the retention of this evidence was not error. *Miller v. Drainage District*, 112 Neb. 206; *Conley Camera Co. v. Multiscope & Film Co.*, 216 Fed. 892. The evidence went merely to defendant's business and profits during the time of his dealing with plaintiff. Other witnesses had testified to the same subject, only in more general terms, to the effect of defendant's gross business and the proportion thereof of the plaintiff's transactions; also of the percentage thereof of defendant's profits per year, as derived from the sale of plaintiff's goods, which would much more than equal the amount of the verdict; therefore the evidence objected to was at most merely cumulative, even though important.

Third. The plaintiff gave as one of its principal reasons for cancelation that defendant had repeatedly been in default of payments, and for taking out unearned discounts. It goes without saying that, generally, under a contract of this sort, if there is a definite understanding as to terms of payment and the buyer breaches those conditions, the seller, of course, has a right to discontinue the relationship without submitting himself to damages. In other words, if the buyer first breaches his agreement the seller could consider his contract at an end. Even

though defendant may have been in default of its payment under contract terms, the plaintiff continued to carry on under the agreement by accepting and filling orders from the defendant, and therefore must be deemed to have waived such breaches on the part of defendant.

Where the aggrieved party does not act upon the breach by the other of the terms of a contract, but does anything which draws on the other party to execute its agreement after default in respect to time, or which shows it is deemed a subsisting agreement after such default, it will amount to a waiver, as will also a failure to avail oneself of it at the first fit occasion and before or when the other begins, after default, to act again on the agreement. 6 R. C. L. 1022, sec. 383; *Knowlson v. Piehl*, 130 Mich. 597; *Carter v. Root*, 84 Neb. 723.

Fourth. The contract of agency being indefinite as to the time it was to run, what was its duration? Where the continuation of a contract is without definite duration the law implies a reasonable time, and what is a reasonable time is to be determined from the general nature and circumstances of the case. When the obligor has expended a substantial sum of money or value or has substantially rearranged his business, as in this case, preparatory to engaging upon the terms of agreement for the benefit of obligee, he ought, through fairness, to have a reasonable time and notice of the cancelation of the contract in order that he might have a reasonable opportunity to put his house in order. And the notice of termination should be such as to clearly convey the intention of the parties, 13 C. J. 604, sec. 630; 6 R. C. L. 896, sec. 283. The foregoing rules are specifically applied to an exclusive agency contract in *Erskine v. Chevrolet Motors Co.*, 185 N. Car. 479, with exhaustive annotations in 32 A. L. R. 196.

It is disputed that the plaintiff stated to the defendant that the latter would be required to sell at least $60,000 worth of cigars per year in order to hold the contract. The verdict of the jury settled that question in favor of

the defendant. The question then arises of the time for measuring defendant's damages, if any. Certainly the plaintiff could not cancel the agency contract if the defendant did not sell that amount of cigars at the end of the first month. The same would be true at the end of the first six months' period. We think under the conditions stated that the defendant would have the volume of sales for an entire year before it could be ascertained whether or not that particular condition had been met, and that the plaintiff could not exercise the option to cancel on that ground short of the expiration of a full year. The plaintiff canceled the contract when the defendant was well into the second year of dealings with the plaintiff, as the relations under the contract began in November, 1921. There could have been no means by which the parties could determine whether the defendant was making the required sales until the year had expired in the following November. Without this phase of the case the argument of the plaintiff's counsel would be conclusive. We think, however, that the terms and general circumstances would render this contract terminable only at the end of a full year.

Defendant alleged that it did, in fact, sell over $100,000 worth of cigars in the year 1922, and for the two months in 1923, before the plaintiff canceled the contract, had increased its sale. There was evidence to support that allegation and it was for the jury to consider in arriving at a verdict.

The judgment of the district court is

AFFIRMED.