Elvin P. **EVANS**, Plaintiff,

v.

**MO–KAN TEAMSTERS PENSION FUND,** Defendant.

No. 75 CV 411 W 4.

United States District Court, W. D. Missouri, W. D.

July 24, 1980.

---

**3.** *See also* the deposition of Commissioner Pomerleau, taken on June 26, 1978.

Stanford C. Madden, Kansas City, Mo., for plaintiff.

Albert Yonke, Yonke & Shackelford, Kansas City, Mo., for defendant.

## OPINION AND ORDER

ELMO B. HUNTER, District Judge:

This is an action brought pursuant to Section 502 of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1132. The plaintiff seeks that this Court find that the defendant violated the terms of the pension plan in denying plaintiff his pension benefits. Plaintiff also seeks an award of attorney's fees.

The case was called for trial on October 31, 1979. The parties waived presentation of testimony and submitted this matter on the exhibits and a joint stipulation of uncontroverted facts.

### I.

The joint stipulation and the documentary evidence clearly establish the factual posture of this case.

Plaintiff was employed by Koss Construction Company ("Koss") from approximately 1950 to December 15, 1973. He worked as a truck and automotive mechanic for the entire 23 year period.

On January 2, 1974, plaintiff applied for pension benefits under the provisions of defendant pension plan. Plaintiff's application for benefits was denied by the trustees of the plan on December 13, 1974. On December 23, 1974, plaintiff was advised of the reasons for his denial in a letter from defendant. The reasons were expressed as follows:

"... Your application was rejected for the following reasons:

1.) Contributions made by Koss Construction Company on your behalf from 1970 through October, 1973, were not made under the provisions of a written collective bargaining agreement with a participating local union requiring contributions to this Fund. During the period of January, 1970, to January, 1974, the evidence indicated that you were employed in Topeka, Kansas, Hutchinson, Kansas, Glenwood, Iowa, Melvern, Kansas, and Stillwater Oklahoma. In all of those areas you worked under collective bargaining agreements which did not require payments of contributions to this Fund. 2.) Your 21 years past credited service was not within the geographical jurisdiction of the Fund. During that time you worked outside of the areas of participating local unions which had collective bargaining agreements requiring contributions to the Fund."[1]

There is no dispute in this case that Koss was obligated under various collective bargaining agreements to participate in defendant pension fund.[2] Rather, the controversy here involves a dispute over the application of the eligibility standards of the pension plan.

The pension plan has three basic requirements. First, the employee must have reached his 57th birthday. Second, the employee shall have at least twenty years of credited service in the jurisdiction of the fund. And third, the employee shall have contributions made in his behalf based on at least 4800 hours of covered employment.[3]

Plaintiff was 59 years old at the time of his application for pension benefits. Further, defendant does not dispute the fact that plaintiff had worked for Koss for 23 years in traditional Teamsters work.[4] As well, the record clearly indicates that Koss made contributions to the fund for 5,968.5 hours of work on plaintiff's behalf from 1970 to 1973.[5] Defendant admits that it received these funds, accepted them, and still retains them.

Instead, defendant argues that plaintiff should be denied his pension benefits because for certain periods of his 23 year tenure with Koss, plaintiff worked outside of the "jurisdiction of the fund".[6] The collective bargaining agreements obligating

1. See defendant's exhibit No. 21.

2. See stipulation Nos. 1–21.

3. See defendant's exhibit No. 2, at p. 8.

4. See stipulation No. 7; see also, defendant's exhibit Nos. 16, 17 and 28.

5. See stipulation No. 23.

6. Defendant's exhibit Nos. 16, 17 and 18 indicate the following locations of employment for plaintiff:

| 1950 | New London, Missouri |
|---|---|
| 1951 | Springfield, Missouri – Sullivan, Missouri |
| 1952 | Wamego, Kansas – Independence, Missouri – Wichita, Kansas |
| 1953 | Wichita, Kansas – Grandview, Missouri |
| 1954 | Wichita, Kansas – Paxico, Kansas – Belton, Missouri |
| 1955 | Paxico, Kansas – Belleville, Kansas – Atchison, Kansas – Topeka, Kansas |
| 1956 | St. Charles, Missouri – Topeka, Kansas |
| 1957 | Kennett, Missouri – Marysville, Kansas – Newton, Kansas – Olathe, Kansas – Jefferson City, Missouri – Topeka, Kansas |
| 1958 | Ottawa, Kansas – Topeka, Kansas |
| 1959 | Chillicothe, Missouri – Topeka, Kansas |
| 1960 | Bolivar, Missouri – Abilene, Kansas – Topeka, Kansas |
| 1961 | Solomon, Kansas – Wichita, Kansas – Topeka, Kansas |
| 1962 | Joplin, Missouri – Waynesville, Missouri – Palmyra, Missouri – Manhattan, Kansas – Topeka, Kansas |
| 1963 | St. Joseph, Missouri – Topeka, Kansas |
| 1964 | Grinnell, Iowa – St. Joseph, Missouri – Topeka, Kansas |
| 1965 | Cameron, Missouri – Red Oak, Iowa – Sweet Springs, Missouri – Topeka, Kansas |
| 1966 | Neola, Iowa – Topeka, Kansas |
| 1967 | Jewell, Iowa – Onawa, Iowa – Dennison, Iowa – Topeka, Kansas |
| 1968 | Topeka, Kansas – El Reno, Oklahoma – McPherson, Kansas – El Reno, Oklahoma |
| 1969 | El Reno, Oklahoma – Muskogee, Oklahoma – Belton, Missouri – Topeka, Kansas |
| 1970 | Topeka, Kansas – Belton, Missouri – Hutchinson, Kansas – Glenwood, Iowa |
| 1971 | Topeka, Kansas – Kingman, Kansas – Rich Hill, Missouri – Bethany, Missouri – Glenwood, Iowa |
| 1972 | Topeka, Kansas – Eagleville, Missouri – Hamburg, Iowa – Melvern, Kansas |
| 1973 | Topeka, Kansas – Melvern, Kansas – Stillwater, Oklahoma |

Koss' participation in the pension plan required pension fund payments for work performed in all counties in the State of Missouri (except St. Louis City and St. Louis County) and Wyandotte, Johnson, Leavenworth and Miami Counties in the State of Kansas.[7] Defendant's position is that the 4800 hour requirement was not met because only 2,243.5 of the 5,968.5 hours of contributions from 1970–1973 were "lawfully" made pursuant to the requirements of a collective bargaining agreement. And, defendant contends that plaintiff does not have 20 years of credited service in the jurisdiction of the fund because he worked outside of the aforementioned counties for a portion of the 23 years.[8]

The contractual instruments establishing the pension plan do not define the term "jurisdiction of the fund".[9] Although defendant argues that the term has been consistently interpreted to mean only the geographical areas covered by the collective bargaining agreements, this Court notes that the minutes of a meeting of the fund's trustees on September 13, 1974, reflect that the trustees passed a resolution to submit the term "jurisdiction of the fund" to defendant's counsel for an interpretation of the term so that the trustees could define it.[10] Also, it is significant that defendant accepted all hours of contributions while plaintiff was working "outside" of the jurisdiction of the fund. Further, it appears that defendant was aware that plaintiff was working outside of the State of Missouri.[11]

## II.

This Court agrees with defendant that Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) only authorizes payments to a pension fund pursuant to a written agreement. *See, Moglia v. Geoghegan*, 403 F.2d 110 (2nd Cir. 1968); *Denver Metro. Ass'n v. Journeyman Plumbers*, 586 F.2d 1367 (10th Cir. 1978).

Here, there is no question that the necessary written agreements existed for the work plaintiff performed in the areas governed by the collective bargaining agreements obligating Koss.[12] Defendant's argument is that for those periods that plaintiff worked outside of the areas delineated in the collective bargaining agreements, the contributions that Koss made on plaintiff's behalf were not under the collective bargaining agreements and thus not applicable to the eligibility requirements of the pension fund.

Essentially, this case involves a question of contract interpretation.[13] The pension

7. See stipulation Nos. 14 and 15.

8. Defendant's calculations indicate that plaintiff only had 14½ years of credited service in the jurisdiction of the fund. See defendant's brief, p. 11. Curiously, in its brief, defendant questioned whether plaintiff had actually fulfilled the 1000 hour per year requirement for past credited service for the pre-1970 period on the ground that plaintiff failed to produce any evidence on the question. The peculiar aspect of defendant's argument is that *defendant's* exhibit No. 17 which is a letter from Koss to defendant rather clearly shows that plaintiff met the 1000 hour a year requirement for at least 20 years.

9. See defendant's brief, at p. 10.

10. "BE IT RESOLVED, that the application of Elvin P. Evans be turned over to Attorney Yonke for a thorough review and study and advise the Board as to whether or not he felt the Trust Fund should or should not pay this man a pension, and at the same time bring back a recommendation to the Board as to defining the jurisdiction of the Fund. MOTION UNANIMOUSLY CARRIED." Excerpt from defendant's exhibit No. 24.

11. Plaintiff's exhibit No. 14 reflects that at least in regards to health and welfare payments made in February, 1971, defendant knew that plaintiff was working outside of Missouri. In fact, defendant returned the contribution to Koss and informed Koss that the outstate rate was higher than the instate rate. Koss then remitted the higher rate. Nothing about the exhibit suggests that the defendant only used this form for remittances from the counties in Kansas that were included in the collective bargaining agreements.

12. See footnote 2, supra.

13. The trust agreement includes a provision stipulating that all questions of contract interpretation are to be governed by Missouri law. See note 14, infra.

fund was established pursuant to an "Agreement and Declaration of Trust".[14] The terms of the pension plan are spelled out in the document entitled "Mo-Kan Teamsters Pension Plan".[15] As conceded by defendant in its brief, the term "jurisdiction of the fund" is not defined in the plan.[16] And similarly, the term is not defined in the trust agreement. Significantly, the evidence demonstrates uncertainty on the part of the trustees regarding the proper geographical scope of the plan. Indeed, on the whole, the record indicates that there is substantial ambiguity on this question. While defendant argues that there was no obligation on the part of Koss to make contributions to the fund while plaintiff worked outside of those areas defined in the collective bargaining agreements, the question here is whether the intent of the parties to these pension plan instruments was to limit the geographical scope of the fund to just the areas identified in the collective bargaining agreements.

█ This Court observes that it has long been the law in Missouri that the "cardinal rule of interpretation of contracts is to ascertain, if possible, from the instrument itself the intention of the parties, and to give effect to that intention. Where there is obscurity or ambiguity, however, the language should be read in light of all surrounding circumstances, including acts of parties indicating what interpretation was placed upon it by the parties themselves." *H.K. Porter Co. v. Wire Rope Corp. of America, Inc.*, 367 F.2d 653, 660 (8th Cir. 1966) (*quoting Pitcairn v. American Refrigerator Transit Co.*, 101 F.2d 929, 936–37 (8th Cir. 1939)); *see also, Leggett v. Missouri State Life Insurance Co.*, 342 S.W.2d 833 (Mo. en banc 1960); *Wilkinson v. Tarwater*, 393 S.W.2d 538 (Mo.1965); *City-Wide Asphalt Co. Inc. v. City of Independence*, 546 S.W.2d 493 (Mo.App.1976); and *Modine Mfg. Co. v. Carlock*, 510 S.W.2d 462 (Mo. 1974).[17]

█ In this case, contrary to the assertion in defendant's brief, ambiguity existed regarding the scope of the jurisdiction of the fund. And, insofar as defendant's conduct in accepting the contributions made in plaintiff's behalf treated the contributions as validly made, this Court is drawn to the conclusion that the defendant interpreted the terms of the trust agreement and the pension plan in a manner authorizing plaintiff's eligibility for a pension. "[T]he past actions and practices of the parties to a contract are to be accorded substantial weight in determining its proper interpretation, particularly if the conduct manifesting their construction occurred prior to any controversy." *Denver Metro. Ass'n. v. Journeyman Plumbers, supra*, 586 F.2d at 1371; *see also, Pasquel v. Owen*, 186 F.2d 263 (8th Cir. 1951); and *Southside Realty Co. v. Hamblin*, 387 S.W.2d 224 (Mo.App.1964). This is especially so when, as here, the interpretation of the contract that is gleaned from the parties conduct is against the defendant's interest. *See, Landau v. Laughren*, 357 S.W.2d 74 (Mo.1961); *Meredith Development Co. v. Bennett*, 444 S.W.2d 519 (Mo.App.1969); and *Lene v. M.F.A. Mut. Ins. Co.*, 301 S.W.2d 874 (Mo. App.1957).[18]

---

14. See defendant's exhibit No. 1.

15. See defendant's exhibit Nos. 2 and 3.

16. Defendant's brief, at p. 10.

17. And as Professor Corbin has noted, "[i]n the process of interpretation of the terms of a contract, the court can frequently get great assistance from the interpreting statements made by the parties themselves or from their conduct in rendering or in receiving performance under it." 3 Corbin, Contracts § 558.

18. This Court notes that the Eighth Circuit has declined to apply principles of equitable estoppel against a pension fund because of the im-

portance of maintaining the fiscal and actuarial soundness of these funds. *Phillips v. Kennedy*, 542 F.2d 52, 55 n.8 (8th Cir. 1976); *see also, Moglia v. Geoghegan, supra*, 403 F.2d 110; *Feathers v. United Mine Workers of America Health and Retirement Fund*, 99 LRRM 2287 (D.D.C.1978); *Chamberlin v. Bakery and Confectionery Union and Industry International Pension Fund*, 99 LRRM 3176 (N.D.Cal.1977); and *Hodgins v. Central States Southeast and Southwest Pension Fund*, 81 CCH Lab. Cas. ¶ 13,076 (E.D.Mich.1976). Nevertheless, while not considered for estoppel purposes, the ac-

**14**

In sum, this Court is persuaded that the ambiguity in the trust and pension plan documents regarding the geographical scope of the fund coupled with the consistent treatment of the contributions made for plaintiff as valid and proper payments evidences an interpretation of the pension plan contracts including plaintiff in the plan.[19]

Therefore, upon careful consideration of the issues presented in this action, this Court holds that the defendant's decision to deny plaintiff his pension benefits was arbitrary and capricious when viewed in light of the foregoing analysis. *See, Phillips v. Kennedy, supra,* 542 F.2d at 54; and *Maness v. Williams,* 513 F.2d 1264, 1265 (8th Cir. 1975).

### III.

### CONCLUSIONS OF LAW

1.) This Court has jurisdiction over the parties and the subject matter of this litigation.

2.) Defendant's decision to deny plaintiff his pension benefits was arbitrary and capricious.

3.) Plaintiff is entitled to all pension benefits payable under the terms of defendant pension plan from the date of his application for benefits.

4.) Plaintiff's counsel is entitled to an award of attorney's fees under 29 U.S.C. § 1132(g).

### IV.

For the reasons above-stated, it is hereby

ORDERED that judgment be entered in favor of plaintiff in accordance with the foregoing findings and conclusions. It is further

ORDERED that plaintiff's counsel is directed to submit within 10 days of the date of this Order a sworn affidavit outlining his fees in this cause.

ceptance of contributions by defendant can be considered to help establish the parties interpretation of the scope of the fund. See, *Phillips v. Kennedy,* supra, 542 F.2d at 55 n. 8.

19. In commenting on the Restatement of Contracts, Professor Corbin has observed:

" 'If the conduct of the parties subsequent to the manifestation of the intention indicates that all the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation.' In Comment on this subsec-

tion, it is said: 'Under the rule stated in this clause the meaning of the contract can not be stretched beyond what the language will bear. Such conduct of the parties, however, may be evidence of a subsequent modification of their contract.' This seems to indicate that if the 'practical interpretation' is reasonable, it holds as an interpretation; while if it is unreasonable, it holds as an agreed modification." 3 Corbin Contracts § 558 n. 4.