# People's Co-operative Association v. Lloyd.

### Action for Breach of Special Contract of Employment.

1. *Contract for performance of personal services; discharge before expiration of term; offer of continued employment at less wages.*—When a person is employed for a specified term, at stipulated monthly wages, and is discharged before the expiration of the term, his acceptance of continued service at less wages would be a modification of the original contract, and an abandonment of any claim to more; consequently, his rejection of the offer neither prejudices his right of action, nor reduces the amount of his recovery.

APPEAL from the City Court of Selma.

Tried before the Hon. JONA. HARALSON.

This action was brought by Isaac D. Lloyd against the appellant, a private domestic corporation, to recover damages for the breach of an agreement, by which, in consideration of plaintiff's performance of services as a clerk in defendant's store, the defendant undertook and promised to pay him $55 per month, from the 1st January, to the 1st September, 1883, but discharged him, without fault, before the expiration of the term; and was commenced on the 30th November, 1883. A trial by jury was waived, and the cause was submitted to the decision of the presiding judge, who rendered judgment for the plaintiff, for $151.14; to which judgment the defendant

duly excepted, and now assigns the same as error. It was proved on the trial, as the bill of exceptions shows, that the contract of employment was made verbally by J. H. McIlwain, the president of the defendant corporation; subject to the approval of the board of directors; that the plaintiff continued in the discharge of his duties as clerk in the defendant's store, until on or about the 7th May, when he was informed by one Hall, the superintendent and manager of the store, that he could be employed no longer; but, at the request of Hall, he continued to discharge the duties of clerk, during the temporary absence of another clerk, until about the 15th May. The term of service, as agreed on between plaintiff and said McIlwain, was for eight months, ending September 1st; and when plaintiff was notified by Hall of his discharge, he denied the right of the defendant to discharge him; to which Hall replied, that the contract of employment had never been ratified by the board of directors. It was shown that one of the rules or by-laws of the defendant corporation was in these words: "*Rule 21. The directors shall have management and supervision of the business of the association, shall appoint the salesmen and employees, and shall assign to them such duties and compensation as the directors may think fit.*" As to the ratification of the contract with plaintiff, it was shown that, at a meeting of the board of directors held on the 8th March, 1883, while a proposed reduction of expenses was under consideration, it being suggested that plaintiff's employment had never been ratified, a resolution was offered verbally by T. D. Cory, one of the directors, which was afterwards entered on the minutes in these words: "On motion of Maj. Cory, the trade made with Lloyd by the president and manager is ratified and confirmed *to this date*." At that meeting of the board, L. H. Montgomery acted as secretary when this resolution was offered and adopted; and he testified, as a witness for the plaintiff, that he committed the resolution to writing as adopted, and that the italicized words were not a part of it. Montgomery left the room before the conclusion of the meeting, and the proceedings were afterwards entered into the book of minutes, from his memoranda, by one Nolan, his successor. Said Nolan testified, on the part of the defendant, that he added the italicized words "because Maj. Cory said the resolution ought to read that way;" but it does not appear at what particular time the words were added, nor whether they were added before or after the next meeting of the board of directors, at which the minutes were read and approved. One of the directors testified, on the part of the defendant, that he understood "the object of the resolution was to discharge or get rid of Lloyd—that they could not discharge or get rid of him in any other way,

[People's Co-operative Association v. Lloyd.]

as he had never been employed by the board of directors."
The plaintiff, testifying on his own behalf, further stated:
" They paid me up to May 15th, 1883. I offered to remain,
but Hall said he could not keep me. He told me that I could
stay and work, if I would take $40 or $45 per month, but I
refused to do so." Hall, a witness for the defendant, denied
this offer on his part, and said that plaintiff offered to remain
at $40 per month, but he declined to keep him. This is the
substance of the evidence, as set out in the bill of exceptions;
" and upon this evidence," it is recited, " the court gave a ver-
dict and judgment for the plaintiff."

SUMTER LEA, and W. R. NELSON, for the appellant, cited
Angell & Ames on Corporations, § 513; *Coffin v. Collins*, 17
Maine, 440; *Bank v. Bonner*, 13 Sm. & Mar. 649; *Meertief
v. Strauss*, 64 Ala. 308; *Holloway v. Talbot*, 70 Ala. 392;
15 Conn. 327.

BROOKS & ROY, *contra*.

STONE, C. J.—One of the provisions of the act creating
the Selma City Court makes it our duty, on appeal from that
court's findings on fact, to "review the same without any pre-
sumption in favor of the ruling of the court below on the
evidence." – Sess. Acts 1874–5, pp. 386, 390. This, in ordinary
cases, would place this court at a great disadvantage. That
court examines witnesses *ore tenus*, and can observe their man-
ner while testifying. It goes without saying, that much of the
credit we accord to oral communications made to us depends
on the manner and appearance of the narrator. The witnesses
come not before us, but we are left to form our opinions from
a cold, written statement of what has been testified to, with
a suspicion, amounting almost to conviction, that an accurate
portraiture of the testimony as it was given is not before us.
This is a new feature in judicial administration; but the
novelty, if not anomaly, does not stop here. We may reverse
the City Court's judgment, and render such judgment as we
think he should have rendered; and this, without according
any weight whatever to his findings. He hears the facts de-
tailed orally, by witnesses examined and cross-examined in his
presence, and forms his judgment thereon. But his judgment
weighs nothing, and must yield to our judgment, pronounced
on an imperfect written statement of what they did testify be-
fore another tribunal. This precise thing the statute requires
us to do. All of us know the difference in value between a
direct communication, and a second-hand report of it.

We have indulged in these reflections, not because they are

called out by the facts of this case. We do not hesitate to say the finding of the City Court was justified—required by the testimony. Plaintiff's witnesses speak positively, clearly, naturally. Montgomery wrote down the words as soon as they were uttered and adopted; and those words were afterwards copied in the minutes by his successor, and remained unaltered several weeks, before the inapt words, "to this date," were added—not in open meeting—but in some manner not fully explained. Against this, how stands the defendant's version of the transaction? Cory, the mover of the resolution, is not examined, and the record fails to inform us why so important a witness was not called. It is contended, however, that the object of the resolution was to disaffirm the contract, and get rid of Lloyd. Why not disaffirm the contract, if this was the object? Why ratify it as a means of rejecting it? Why not repudiate it, and then, if intended, vote compensation to the plaintiff for the time he had served? The admitted, conditional contract made by McIlwain and Montgomery with Lloyd, was for a gross term of eight months, ending September 1st. The contract was for that term, or it was no contract, if the testimony be believed. Ratification on the 8th of March, to be binding "to this date," is not ratification, but the offer of a new, substituted contract, which could not be binding without Lloyd's consent. A further view: If the resolution of March 8th was a repudiation of the contract, why was Lloyd allowed to remain in the service afterwards?

It is contended, however, that Hall, the new superintendent, offered Lloyd wages at forty or forty-five dollars a month, if he would continue to serve the association, and he refused to be employed. Based on this, it is contended that, inasmuch as Lloyd could thereby have lightened the burden on defendant, his claim to that extent should be abated. It might be sufficient answer to this claim, that Hall positively denies the making of such offer, and thus leaves the disputed fact on the testimony of witness against witness. But, as we understand Lloyd's testimony, it was at most an offer by Hall to retain him, if he would consent to a reduction of his wages to that extent. If he had so consented, and remained in the service of the association, this would have operated a modification of the contract, and an abandonment of all claims to higher wages.—*Strauss v. Meertieff*, 64 Ala. 297; *Holloway v. Talbot*, 70 Ala. 389. Lloyd was justified in refusing the offer.

Affirmed.