## IRVIN L. KRAMER v. WOLF CIGAR STORES COMPANY.

### No. 1539.  Decided March 29, 1906.

**1.—Evidence Contract—Breach.**

On the issue whether the transfer from one store to another of one employed as general manager of several cigar stores maintained by his employer in the same town was a mere change of headquarters, which the employer had a right to make, or a substantial change in the duties, authority and dignity of the manager as conferred by the written contract, evidence that it was verbally agreed at the time the contract was made that the headquarters should be at the first place and that it was suitably fitted up therefor was admissible. (P. 600.)

**2.—Same—Written Contract—Parol Evidence—Charge.**

A written contract for the employment of plaintiff as general manager of several of defendant's stores could not be added to by proof of a parol agreement that his headquarters as manager should be at a certain one of such stores.  Where evidence of such parol agreement was properly admitted as bearing on the question whether a change of headquarters involved a change in the duties and authority of plaintiff as manager, a requested charge limiting the effect of the evidence to such issue should have been given.  (Pp. 600, 601.)

**3.—Reversal—Rendering Judgment or Remand.**

The evidence presenting a question of fact whether plaintiff had been wrongfully deprived of his authority and rights under his contract of employment, or had wrongfully abandoned it, the Appellate Court, on reversing a judgment in his favor should have remanded the case instead of rendering judgment against him.  (P. 601.)

**4.—Wrongful Discharge—Damages.**

In estimating damages occasioned by the wrongful discharge of plaintiff before the end of his term of employment, he is held to the exercise of reasonable diligence to obtain other employment of substantially the same character, if procurable, and if not, then other employment for which he was fitted, his probable earnings therein to be dedicated from his damages for wages lost by discharge.  Only in case such employment was not procurable would question arise as to the value of his services to himself in an independent business venture engaged in by him meantime.  And this value would not be the wages he would have had to pay another to render the same services, but the pecuniary value his services yielded him in the business.  But the fact that the business made no profits during that time would not be conclusive that such services yielded him nothing, since his efforts might have added appreciable value to the business during that time in establishing it.  (Pp. 602, 603.)

Kramer sued the cigar company and recovered judgment for $763, from which defendant appealed, appellee filing cross-assignments of error.  Judgment was reversed and rendered for appellee for $138, and he obtained writ of error.

*Etheridge & Baker* and *Arthur L. Kramer,* for plaintiff in error.— The court did not err in refusing to exclude the evidence of plaintiff as to verbal understanding that his headquarters should be at Store No. 4, it appearing that such testimony does not vary, contradict or modify the written contract sued on.  Cook v. Todd, 72 S. W. Rep., 779; Louisville & N. Ry. Co. v. Duncan, 34 So. Rep., 988.

It was not the duty of the plaintiff to obey all reasonable demands of the defendant.  He was employed for specific duties, and his only

obligation to defendant was to perform the duties falling within the scope of his employment. Lone Star Salt Co. v. Wilderspin, 81 S. W. Rep., 327; 20 Am. & Eng. Encl. Law (2d ed.), 32 and notes. As to right to engage in business: Southwestern Tel. & Tel. Co. v. Bross, 45 S. W. Rep., 178; Toplitz v. Ullman, 2 Misc. N. Y., 130; Porter v. Burkett, 65 Texas, 383; Van Winkel v. Satterfield, 25 S. W. Rep., 1113.

An employe wrongfully discharged need seek employment only in such lines of business as he is fitted to perform, and if with reasonable efforts he can not secure such employment, he is not obliged to seek employment in other lines of business. Lone Star Salt Co. v. Wilderspin, 81 S. W. Rep., 327; 20 Am. & Eng. Encl. Law (2d ed.), 34 and notes; 13 Cyc. Law & Proced., 74 and notes; Costigan v. Mohawk & H. Ry., 2 Denio, 609; Shannon v. Comstock, 21 Wend., 457; Howard v. Daly, 61 N. Y., 369.

If it becomes apparent to a discharged employe that a search for employment is fruitless, then the law does not require him to go through the empty form of making such search. Simon v. Allen, 76 Texas, 399.

Defendant is entitled, by way of offset to plaintiff's demand herein, to such profits, if any, as plaintiff may have earned in his business, but is not entitled to charge plaintiff, by way of offset, with the reasonable value of plaintiff's services to himself, if no profits were earned. Toplitz v. Ullman, 20 N. Y. Supp., 50; Toplitz v. Ullman, 20 N. Y. Supp., 683.

*Fisher, Sears & Campbell* and *Coke & Coke,* for defendant in error.— The court erred in not excluding the evidence of the plaintiff to the effect that it was verbally agreed between him and the defendant, contemporaneously with the execution of the written contract sued on, that his headquarters should be at Store No. 4. McCauley v. Long, 61 Texas, 80; White v. Affleck, 1 Texas U. C., 83; Lynch v. Ortlieb, 70 Texas, 730; Hunt v. White, 24 Texas, 650; Arnold v. Jones, 26 Texas, 337; Bigham v. Talbot, 51 Texas, 453.

The uncontradicted evidence showing, regardless of the question as to whether appellee had, voluntarily or not, quit the service, that appellant tendered the appellee the opportunity to continue in its service for the entire unexpired term, and at the same compensation as under the contract, and in the same city, and in the same line of business, and with practically the same duties to perform; and the uncontradicted testimony further showing that at the time that appellee quit appellant's service there was due him under the contract price the sum of $138, which was tendered him and which he refused—appellee, under such conditions, was not entitled to recover more than the $138—and the court erred in refusing to so charge. Texas Ben. Assn. v. Bell, 3 W. & W., condensed cases, par. 277; Weber Gas, etc., Co. v. Bradford, 79 S. W. Rep., 47; Mudgatt v. Texas Tobacco Co., 61 S. W. Rep., 150; Allgeyer v. Rutherford, 45 S. W. Rep., 628; Lichenstein v. Brooks, 75 Texas, 196; Waite's Actions and Defenses, 456; 2 Sutherland on Damages, 473; Woods' Master and Servant, 244; 1 Greenleaf on Ev., par.

261a; Heckscher v. McCrea, 24 Wend., 304; 20 Am. & Eng. Ency. of Law (2d ed.), 34-35.

It was appellant's right, as a matter of law, under all of the circumstances, there being no contract inhibition against same, to remove its headquarters to such point as deemed best and most advantageous by its executive officers. 20 Am. & Eng. Ency. of Law (2d ed.), 30, and foot notes; Gulf, C. & S. F. Ry. Co. v. Mengham, 67 S. W. Rep., 765.

When an employe is dismissed without sufficient cause before the termination of the contract period, it is his duty to seek other employment of similar nature, and it being shown that he made no effort to secure employment debars him of a right of recovery on the contract. Same authorities.

WILLIAMS, ASSOCIATE JUSTICE.—The Court of Civil Appeals having reversed a judgment of the District Court in favor of the plaintiff in error against the defendant in error and rendered final judgment that the former take nothing by his suit, this writ of error was granted because this court was of the opinion that when the judgment was reversed the cause should have been remanded for further trial.

The action was by Kramer to recover damages for breach of a contract by which the defendant had employed him as the general manager of its stores in Dallas. The contract was in writing, as follows; "This memorandum of an agreement witnesses: That Irvin L. Kramer agrees to faithfully and diligently act as general manager of the Dallas stores of the Union Cigar Stores Company, with headquarters at Dallas, performing such duties as are usually entailed upon a general manager under like circumstances, for the term of one year, beginning on the 8th day of September, 1902; that in consideration of said services, the said Union Cigar Stores Company agrees to pay to the said Irvin L. Kramer, monthly, the sum of two hundred and fifty dollars ($250), due and payable on the seventh day of each month of said term of service. And it is hereby further agreed, that at the expiration of the one year herein provided for, at the option of the said Irvin L. Kramer, this agreement to be extended through an additonal term of one year, which option is to be exercised within thirty days prior to the expiration of the first year. Witness our hands this 9th day of September, 1902. Union Cigar Stores Co., I. L. Wolf, President. Irvin L. Kramer."

Kramer claimed that the company had broken the contract by wrongfully discharging him during the second year of his employment, for which time, in the exercise of his option, he had extended it. The defendant denied having discharged him and claimed that he had quit the service without just cause. The evidence showed that at the date of the contract the company had only one cigar store in Dallas, which was afterwards known as No. 4, but contemplated the establishment of others, which were afterwards established and known as Nos. 5 and 9. The plaintiff was allowed to introduce evidence tending to show that at the time of the execution of the written contract it was agreed that the Dallas headquarters of the business should be at store No. 4, and that this was afterwards suitably fitted up and arranged for that purpose as well as for a store in which to retail cigars, tobacco, and other

articles handled in the business. Here plaintiff had his headquarters as general manager and exercised supervision over the business conducted in all of the stores. His title was changed by consent from general manager to chief clerk, but his duties and authorities over the whole business and all of the stores continued as before. At each of the other stores, Nos. 5 and 9, there was an employe in charge who was also called chief clerk, but was in charge only of the particular store, and was subject to the general supervision of the plaintiff. Store No. 5 was inferior in character and importance to No. 4, and was not suitable for the headquarters of the Dallas business. In February, 1902, plaintiff was notified by letter from his employer to become "chief clerk at store No. 5, at the same salary you are now receiving; that is, $250 per month, until the expiration of your contract or other arrangements shall be made." Before and after this, conversations and other correspondence took place, about which there is a conflict of evidence. Plaintiff attempted to show, circumstantially, that the effort of the defendant was to strip him of the dignity and authority belonging to his position of general manager of the entire business in Dallas, and to reduce him to the position of a mere head clerk, or salesman, in store No. 5; while defendant adduced evidence tending to show that all that was attempted was a change of headquarters from one store to the other, and that its proposals to plaintiff included, not only the payment of the same salary as before, but leaving him in full possession of the authority and the performance of the duties of general manager as provided in the contract. The negotiations resulted in plaintiff's refusal to go to store No. 5 as demanded, and in his discharge for that reason. He remained without employment for some months, and then opened a cigar store of his own which he was conducting at the time of the trial.

The evidence which it is unnecessary to state, was, in our opinion, sufficient to present the issue whether or not the defendant broke the contract by requiring of plaintiff the performance of duties substantially different from those which he had agreed to perform, and that the charge of the trial court correctly submitted that issue to the jury.

We are of the opinion also that the evidence of the agreement fixing the headquarters in store No. 4, and of the fitting up and use of that store for that purpose was admissible. It being the contention of the defendant that, in doing that which led to the discharge of plaintiff, it intended only a change of headquarters and not a change in the character of plaintiff's employment, any circumstance that tended to show its true purpose was admissible—and to this issue the circumstances stated were relevant. The plaintiff, when he offered the evidence, was not required by the court to state the purpose for which it was offered, and the objection to its admission is met when it is found to have been admissible for any purpose.

We agree with the Court of Civil Appeals, however, in the opinion that the written contract did not bind the defendant to keep its Dallas headquarters at any particular point in that city, and that such an obligation can not be added to the contract by proof of a contemporaneous parol agreement. As the owner of the establishment, it was left free to locate its headquarters to suit itself, and if it did no more than

that it committed no breach of the contract; but the facts attending the location and prior maintenance of the headquarters were admissible to aid in the determination of the question of fact, whether the defendant attempted only to change its headquarters, or, under the pretense of doing that, to change also plaintiff's position and the duties he was employed to perform. In view of this testimony and of the apparent contention of plaintiff against the change in headquarters, a full submission of the case required that the jury be so instructed that they would not consider the mere fact of such change, or attempted change, as a wrongful act constituting a breach of the contract and a justification for the plaintiff's refusal to conform to his conduct thereto. Some of the special charges requested by the defendant would, if given, have precluded such a misconception. By its requested charge No. 6, defendant asked that the jury be instructed that if before the relation of employer and employe was severed, defendant offered plaintiff employment at the same salary as plaintiff was then getting, for the same length of time as he was employed for, in the same city, in the same class of business and with same duties, plaintiff could recover only the sum due him at the time of his discharge; and by its charge No. 3, defendant requested the court to instruct that defendant had the right to change its headquarters from store No. 4 to store No. 5 and to maintain them at the latter place, if it so desired. These instructions would have been consistent with the general charge and together with it they would have explained more fully to the jury that the issue was not merely as to a change of headquarters, but as to an effort to make a wrongful change in plaintiff's position under the contract. While for this reason we agree with the Court of Civil Appeals in holding that charge No. 6 ought to have been given, we do not concur in the opinion that the facts therein supposed were so conclusively established that it was proper for the court to render judgment in favor of defendant. If it is true, as plaintiff contends, that defendant not only attempted to change its headquarters but also to make a material change in the position to which he was entitled under the contract, he was under no obligation to submit; and if, because of his refusal to do so, he was deprived of his employment, he would not be precluded from recovering damages by the mere fact that the same compensation was offered by defendant in the new situation that he was getting in the former one. His consent to the proposal as made to him by defendant, under such circumstances, might have operated a change in the original contract and have deprived him of any right to claim that it had been broken by the other party. Peoples Coop. Ass'n v. Lloyd, 77 Ala., 387.

While we are of the opinion that the judgment of the trial court was properly reversed by the Court of Civil Appeals, we hold that the cause should have been remanded for a new trial. We also hold that no other errors than those pointed out are shown by the appellant's assignment of errors.

The appellee (the present plaintiff in error) presented cross-assignments in the Court of Civil Appeals upon which it is proper that we should pass. They have reference to the rules of law to be given to the jury to govern in determining what, if any, deductions should be made

from the contract price for plaintiff's services in case he should be found entitled to recover, as for a breach of the contract. The evidence indicates that plaintiff made no effort to secure any other employment after his discharge and before he went into business for himself, for the reason, as he states, that he knew that the attempt to secure employment of the same character as that which he had of defendant would be useless, as there were none such open in Dallas. The evidence also tended to show that out of his business he had made no profit during the months for which his service with defendant should have lasted. The rules of law applicable to this state of facts may be sufficiently stated without following the cross-assignments.

The plaintiff, if he was wrongfully discharged, was bound only to use reasonable diligence to get other employment and to reduce his loss as far as could thus be done. Of course, if no other employment could have been obtained by reasonable diligence, proof of that fact would meet every requirement of the law. With reference to the character of employment to be considered, the opinion of Judge Henry in Simon v. Allen, 76 Texas, 399, furnishes the rule applicable. If by reasonable diligence and within a reasonable time he could have secured another position of substantially the same character and grade as that which he had held with defendant, such amount as he could have earned therein during the entire term of service should be deducted from the contract price. If it is true, as he claims, that he could not thus have secured such a position, and he knew that fact from the time of his discharge, then, under the second rule laid down in the case referred to, it became his duty to use reasonable diligence to secure other employment for which he was fitted, and in that case, the amount he should have earned in this way during the term of service should be the deduction. Should it be found that no employment of the defined character could have been had by the diligence required, then, and then only, the question will arise as to the deduction to be made on account of plaintiff's business.

It is undoubtedly true that if, during the term fixed by the contract the plaintiff obtained for himself benefits of pecuniary character by employing in his own business the services which would have been due to the defendant under the contract, his recovery should be diminished to the extent of such acquisition. The trial court fixed the measure of this as "the reasonable value of his services to himself in the business." His counsel contends that the measure should be the profits realized in money from the business. We are of the opinion that the charge is correct, but that, under the peculiar facts of this case, it needs some explanation to avoid misunderstanding. The value of his services to himself is not to be understood as meaning what it would have cost to employ him or one like him, but the pecuniary value of that which his services yielded him in the business. This might consist of something more than profits actually received in money. It might happen that, while no such profits had been received during the months through which the service with defendant should have extended, yet that appreciable value had been added to the business by his efforts; and it is this consideration from which we conclude that the measure suggested by

plaintiff's counsel might be inadequate for some contingencies, and that of the court, when understood as explained, more correct. Van Winkle v. Satterfield, 58 Ark., 617; Gates v. School District, 57 Ark., 370; Jaffray v. King, 34 Md., 222; Huntington v. Ogdensburgh & L. C. Ry. Co., 33 How. Pr., 416; Toplitz v. Ullman, 2 N. Y. Supp., 863.

What we have said is deemed sufficient to indicate the rules to guide at another trial.

*Reversed and remanded.*