**Lorrin PALAGI, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

**No. Civ.A. G–98–576.**

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 8, 1999.

---

David A. Jameson, Attorney at Law, Galveston, TX, for David Jameson, mediator.

Gregg M. Rosenberg, Gregg M. Rosenberg & Associates, Houston, TX, for Lorrin Palagi, plaintiff.

Stephen White Eubank, Littler Mendelson, Houston, TX, for Nationwide Mutual Insurance Company, defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Palagi brings this action against Defendant Nationwide Mutual Insurance Company, alleging breach of employment contract. Now before the Court are Defendant's Motion for Summary Judgment, filed on August 10, 1999, and Plaintiff's Motion for Summary Judgment, originally submitted on December 18, 1998, withdrawn on March 24, 1999, and refiled on August 29, 1999. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED,** thereby making Plaintiff's Motion for Summary Judgment moot.

### I. FACTUAL SUMMARY

On September 11, 1997, Plaintiff entered into a two-year employment contract with Defendant's subsidiary, Nationwide Communications, Inc., to serve as Program Director at a Houston radio station, KHMX–FM. The contract called for Plaintiff to receive an annual base salary of $135,000. The agreement commenced on September 15, 1997 and included two provisions that form the basis for this suit. The first permitted Nationwide Communications, Inc. to terminate the contract at-will by September 14, 1998, provided that the company notify Plaintiff of such a decision by June 14, 1998. The second prohibited Nationwide Communications, Inc. from assigning the contract to a third party without Plaintiff's consent.

In late 1997, Defendant began preparations to sell KHMX–FM by first dissolving Nationwide Communications, Inc. As a result, on or about November 25, 1997, Nationwide Communications, Inc. assigned the contract to Defendant with Plaintiff's consent. That same day, Defendant notified Plaintiff that it planned to sell KHMX–FM and presented Plaintiff with a proposed assignment of the employment contract to the subsequent purchaser,

which would be effective as of the date of closing of the sale of KHMX–FM. Plaintiff did not sign. Six months later, on May 28, 1998, Nationwide Communications, Inc. notified Plaintiff and the company's other employees that, pursuant to the Worker Adjustment and Retraining Notification Act ("WARN"), an agreement of sale, dated December 9, 1997, had been executed with Citicasters Co. transferring, among other things, KHMX–FM to Citicasters. The WARN notice explained that the sale would likely close during the third quarter of 1998 and indicated that on the date of closing, employment with Defendant would end. Two weeks later, on June 15, 1998—one day after the termination notice deadline specified in Plaintiff's employment contract—Mr. Don Peterson, General Manager of KHMX–FM, delivered a memorandum to Plaintiff assuring him that Citicasters would honor Plaintiff's employment agreement following the date of closing, which, according to the memo, was to occur in the next sixty days. The memo expressly stated that Plaintiff would become an employee of Citicasters at that time. It also requested that Plaintiff accept Defendant's assignment of the employment contract to Citicasters by June 22, 1998; Plaintiff demurred, wanting more time to decide. Then, in a memorandum dated June 30, 1998, Ms. Sandy Rich, Director of Administration for KHMX–FM, notified all KHMX–FM on-air announcers, including Plaintiff, that Citicasters would assume all employment contracts according to the existing terms of each respective agreement—the terms of the sale of KHMX–FM bound Citicasters to assume all employment contracts "as is." Receiving no response from Plaintiff, Mr. Gene Romano, a Vice–President at Citicasters, met with Plaintiff in late June 1998 and expressly told Plaintiff that he would be retained by Citicasters after the date of closing.

Two months later, on August 2, 1998, Plaintiff wrote Mr. Peterson that although he "would like very much to continue to work" for Citicasters, he wanted to modify his employment contract and therefore would not "assign at this time." Mr. Peterson put Plaintiff in contact with Mr. Willard Hoyt, an official at Citicasters, to explain Plaintiff's desire to renegotiate the 1997 employment contract, but Mr. Hoyt informed Plaintiff that no changes were likely. The sale closed on August 10, 1998 without Plaintiff consenting to Defendant's assignment of his employment contract to Citicasters. Nevertheless, Plaintiff became an employee of Citicasters and continued to work in the same capacity and for the same level of compensation as provided for in his 1997 employment contract with Defendant—he even had better health benefits. Three weeks later, on September 1, 1999, the new General Manager of the station, Mr. Tom Schurr, responded to Plaintiff's August 2, 1998 memo and offered to make a number of revisions to Plaintiff's employment contract. Plaintiff did not respond, but continued to work for Citicasters for nearly two more months, before resigning on October 23, 1998.

Upon leaving KHMX–FM, Plaintiff pursued contract work, providing radio consulting services to local stations—despite the fact that Citicasters remained committed to employing Plaintiff at KHMX–FM as Program Director. For the next seven months Plaintiff reported no income. Currently, his new endeavor as a radio consultant has yielded approximately $32,200. Because Plaintiff resides in Texas and Defendant's headquarters are located outside of Texas, this case is brought pursuant to 28 U.S.C. § 1332(a); therefore Texas law regarding the disputed employment contract controls.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265

(1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.*, 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also* FED. R.CIV.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden,

the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting FED.R.CIV.P. 56(e)).

### B. *Plaintiff's Motion for Summary Judgment*

Pursuant to the terms of the employment contract, Plaintiff seeks to recover from Defendant his salary for the time period spanning from August 10, 1998, the date of his alleged "termination," through the end of his contracted employment term, September 14, 1999. Plaintiff claims this result is proper because Defendant failed to provide a notice of termination to Plaintiff either on or before June 14, 1998, as required by the employment contract. In response, Defendant forwards an affirmative defense asserting that Plaintiff failed to mitigate damages. Despite Plaintiff's superb work in briefing this issue, the Court finds that, assuming a proper cause of action exists, Plaintiff failed to mitigate damages as a matter of law.

Texas case law provides that a wrongfully discharged employee must exercise reasonable diligence to mitigate damages by pursuing other employment, or else the employee is barred from recovering those losses that could have been avoided. *See, e.g., Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983); *Gorges Foodservice, Inc. v. Huerta*, 964 S.W.2d 656, 669 (Tex.App.—Corpus Christi 1997, no pet.); *America West Airlines, Inc. v. Tope*, 935 S.W.2d 908, 915 (Tex.App.—El Paso 1996, no writ); *Lee-Wright, Inc. v. Hall*, 840 S.W.2d 572, 581 (Tex.App.—Houston [1st Dist.] 1992, no writ); *City of Laredo v. Rodriguez*, 791 S.W.2d 567, 571 (Tex.App.—San Antonio 1990, writ denied); *Professional Serv., Inc. v. Amaitis*, 592 S.W.2d 396, 397 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.). Texas courts also have long held that whether such an employee "has exercised reasonable diligence in procuring other work in mitigation of damages is a special defense

of the employer." *Rodriguez,* 791 S.W.2d at 571 (citing *Copeland v. Hill,* 126 S.W.2d 567, 569 (Tex.Civ.App.—Austin 1939, no writ)); *see Huerta,* 964 S.W.2d at 669; *Tope,* 935 S.W.2d at 915.[1]

■ In this case, both sides acknowledge that between November 25, 1997 and September 1, 1998, Plaintiff received four written or verbal notices from either Defendant or Citicasters explaining that Citicasters would honor Plaintiff's employment contract upon completion of Citicasters's purchase of KHMX–FM. In fact, Citicasters offered Plaintiff a better compensation package than was provided for under Plaintiff's contract with Defendant. And, when Citicasters completed its purchase of KHMX–FM on August 10, 1998, Plaintiff's employment continued with Citicasters. It also is undisputed and conclusive that for the ten weeks following the KHMX–FM sale, Plaintiff remained at the radio station working in the same place, at the same desk, at the same job, at the same pay. Given these facts, the puzzling question remains: What are Plaintiff's damages?

■ Plaintiff agrees that "an employee does not actually have to obtain employment, he only has to use reasonable diligence in seeking employment." *P.'s Resp. to Def.'s Mot. Summ.J. at 4.* Here, the evidence proves that Plaintiff failed to use reasonable diligence as a matter of law. In pursuing an affirmative defense on the issue of mitigation of damages, Defendants have the burden to show the amount Plaintiff earned, or could have earned, during the period in question. The undisputed evidence shows that Citicasters offered Plaintiff the exact same job—with a better benefits package—and Plaintiff ultimately rejected it. In fact, for nearly seventy-five days, Plaintiff worked for Citicasters as Program Director. The evidence proves that Plaintiff did not suffer from a single day of unemployment as a result of the sale of KHMX–FM. In the end, Plaintiff refused Citicasters's offer of continued employment. By voluntarily choosing to leave KHMX–FM, Plaintiff cannot possibly argue that any alleged wrongful termination resulted in compensable damages.[2]

1. Plaintiff notes that the *Murphy* court found that "the correct measure of damages for the wrongful discharge of an employee is the present cash value of the contract if it had not been breached, less any amounts that the employee should in the exercise of reasonable diligence be able to earn through other employment." *Murphy,* 658 S.W.2d at 566. Plaintiff, however, fails to note that if Defendant can meet his burden under *Copeland* and thereby demonstrate that Plaintiff could have avoided all damages, then Plaintiff is barred from pursuing his case further.

2. Plaintiff advances two reasons for resigning: unfamiliarity with Citicasters's corporate philosophy and dissatisfaction over Citicasters's unwillingness to extend his employment contract until August 10, 2000. Recognizing that "[g]enerally, the reasonableness of plaintiff's explanation for rejecting a job offer, and the adequacy of efforts to mitigate, are fact questions properly left with the jury," *Huerta,* 964 S.W.2d at 669, the Court nevertheless cannot envision a claim better suited for summary judgment dismissal than Plaintiff's action. As noted previously, there exists no factual dispute that for more than two months following the sale of KHMX–FM, Plaintiff continued working for Citicasters, holding the exact same job, with the exact same title, with the exact same responsibilities, and with the exact same pay as the one he held with Defendant. Moreover, management at Citicasters was willing to increase the overall benefits available to Plaintiff. Finally, the facts indisputably reveal that Citicasters made repeated efforts to retain Plaintiff's as an employee, pursuant to the terms of his 1997 employment contract with Defendant. But for the Plaintiff's resignation from Citicasters, Plaintiff would still have enjoyed the benefits provided under his 1997 employment contract. Instead, Plaintiff decided to branch off into another avenue of radio broadcasting (not comparable to his work as Program Director at KHMX–FM) by starting his own consulting company, earning $30,117.50 since the date of his resignation from Citicasters. *See P.'s Resp. to Def.'s Mot. for Summ.J. at 3.* This 90% reduction in pay resulted from Plaintiff's own doing. Consequently, the Court finds that the reasonableness of Plaintiff's explanation for discontinuing his employment with Citicasters and not obtaining a comparable position subsequent to his resignation from Citicasters conclusively shows a failure to mitigate. As to the second explanation for resignation proffered by Plaintiff, the Court notes that even under the terms of the original employ-

As suggested previously, Plaintiff suffered no actual or reasonable damages, because Citicasters provided Plaintiff the opportunity for continuous and uninterrupted employment throughout the remaining term of the 1997 contract Plaintiff made with Defendant—at the same pay! Had Plaintiff chosen to remain working at KHMX–FM, he would not have suffered any financial loss, because he would have continued working for Citicasters at the same pay rate for the remaining duration of his employment contract. Instead, Plaintiff neglected and voluntarily refused to do so.

Consequently, the Court finds that Defendant has met its burden of proof on mitigation because the facts demonstrate that all of Plaintiff's losses could have been avoided. Therefore, Plaintiff's failure to mitigate in this case constitutes a complete bar to recovery. *See Rodriguez,* 791 S.W.2d at 571 ("The rule is that an employee who has been wrongfully discharged and seeks to recover damages therefrom *cannot recover* for losses which, in the exercise of reasonable diligence, he could have avoided." (emphasis in original) (citing *Mr. Eddie, Inc. v. Ginsberg,* 430 S.W.2d 5, 9 (Tex.Civ.App.—Eastland 1968, writ ref'd n.r.e.))).

## II. CONCLUSION

The facts that have been accepted by both parties conclusively show that Plaintiff failed to mitigate damages when he voluntarily resigned from Citicasters and chose to pursue alternative professional interests. For these reasons, the Court finds that Plaintiff has not stated an appropriate cause of action. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is therefore moot.

ment contract, Defendant was not bound to grant a contract extension; therefore, the Court rejects Plaintiff's argument that Citicasters's failure to extend Plaintiff's contract gave rise to damages claims.

In his response, Plaintiff relies on a ninety-three-year-old case, *Kramer v. Wolf Cigar Stores Co.,* 99 Tex. 597, 91 S.W. 775 (1906), for the proposition that Texas law exempts Plaintiff's duty to make a good faith effort to

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order entered this date, Defendant's Motion for Summary Judgment is hereby **GRANTED** and Judgment is entered for Defendant. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**

obtain and retain employment if "no other employment could have been obtained by reasonable diligence." *Id.* at 777. Here, the facts clearly demonstrate that Plaintiff could have obtained—and in fact did obtain—comparable employment with Citicasters. Therefore, reliance on *Kramer* bolsters Defendant's position that Plaintiff failed in his duty to mitigate damages.