IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0916
════════════
 
Baylor University, Petitioner,
 
v.
 
Betty A. Coley, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Tenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 19, 
2005
 
 
Justice Hecht delivered the opinion of 
the Court, in which Chief Justice 
Jefferson, Justice O’Neill, Justice Brister, Justice Medina, Justice Green, 
and Justice Willett 
joined.
 
Justice Johnson filed a concurring 
opinion, in which Justice 
Wainwright joined.
 
 
Respondent 
Betty A. Coley contends that her former employer, petitioner Baylor University, 
by reassigning her responsibilities to others and thus effectively demoting her, 
breached her contract and forced her to resign from her tenured faculty 
position. The trial court rendered judgment for Baylor based on the jury’s 
failure to find that Coley had been constructively discharged, defined in the 
charge as “mak[ing] 
conditions so intolerable that a reasonable person in the employee’s position 
would have felt compelled to resign.” The court of appeals reversed and 
remanded, holding that the jury should have been asked whether Baylor 
constructively discharged Coley by “‘mak[ing] a material change in the position to which [she] was 
entitled under the contract.’”[1] We conclude that Coley presented no 
evidence Baylor breached her contract and that the jury was properly charged on 
constructive discharge, and we therefore reverse and render judgment for 
Baylor.
Baylor hired 
Coley in 1972 as a librarian in one of its libraries, the Armstrong Browning 
Library (the “ABL” or “Library”), and in 1981 informed her by letter that she 
had been granted tenure on the faculty of the Library. The evidence shows that 
Coley was given the rank of “Assistant Professor”. According to Baylor’s 
personnel policy manual:
 
Tenure means assurance to an experienced faculty member that 
he/she may expect to continue in his/her academic position unless adequate cause 
for dismissal is demonstrated in a fair hearing, following established 
procedures of due process.
 
In her brief 
in this Court, Coley tells us that she was responsible for acquiring and 
preserving materials, presenting the collection to students and others inside 
the Library as well as outside, participating in professional associations, and 
doing scholarly research. When the director of the Library left in 1985, Coley 
applied for the position and was allowed to assume some of its duties until Dr. 
Roger Brooks was hired as director in 1987.
Coley’s 
relationship with Brooks was discordant. Brooks thought her to be abrasive and 
difficult to work with. Dissatisfied with her performance, he reassigned some of 
her responsibilities to himself or her co-workers. In April 1993, while Coley 
was on sabbatical, Brooks wrote to his superior, Dr. Avery Sharp, the University 
Librarian, detailing Coley’s inadequacies. Two weeks later Sharp, in turn, wrote to Coley as follows:
 
It appears that there is a history of low quantity and quality 
of work, self-serving behavior, rude and insulting behavior toward ABL staff and 
members of the public, excessive absences year after year, repeated angry 
outbursts, public criticism of the Director, the former University Librarian, 
the central administration and the University, inadequate ability to accept 
supervision, poor judgment in materials purchasing recommendations, attempts to 
convince dealers and booksellers that you are an approved purchasing agent for 
the Library, and inability or unwillingness to complete assigned 
projects.
 
Sharp informed 
Coley that she would not be terminated but would be given an opportunity to 
improve. He also told her that she would not be given a raise in salary or a 
promotion, and that her responsibilities, like those of other Library staff, 
would be reviewed. “Effective immediately and continuing indefinitely,” he 
concluded, “you have no supervisory responsibilities, 
no public service responsibilities, and no budgetary responsibilities.” It is 
not clear whether any of these were part of her responsibilities when she first 
received tenure, or whether she had taken them on while the director’s position 
remained vacant.
Coley 
complained to Baylor’s President, Dr. Herbert H. Reynolds, who told her she 
could pursue a formal hearing with the University Grievance Committee, but she 
never did. In August 1993, Brooks changed the title of Coley’s position from 
“Librarian” to “Research Librarian” and met with her to discuss her duties, 
which they both agreed were “very important” to the operation of the Library. 
But in October, she wrote Sharp:
 
During the past six years my relationship with Dr. Brooks has 
deteriorated to such an extent that I believe he is now trying to remove me from 
the Library. As you know, he has demoted me to “research librarian” and I am now 
subject to monthly reports to you. He has stripped me of almost every 
responsibility I once had in the Library 
. . . .
 
I believe his reasons for doing this are caused by a strong 
personality conflict between us, rather than the result of misdemeanors on my 
part.
 
She concluded 
that she was “anxious not to cause trouble” and that she “wish[ed] to continue 
working here.” When Sharp responded that she should send a copy of her letter to 
Brooks, she replied:
 
I have not sent a copy to Dr. Brooks because I am anxious to 
avoid further confrontation. Things have been much better recently in the 
Library, and I wish them to continue. My letter was intended solely to put on 
record my views of the events of the past few months.
 
Two weeks 
later Brooks issued a memo stating that Coley had been named “Research 
Librarian” and would be
 
responsible for conducting research on topics pertaining to 
the collection’s resources, the cataloging of newly acquired non-print and 
non-manuscript items, the cataloging of archival material pertaining to the 
collection’s early history, and the maintenance of the clippings 
file.
 
This was the 
position he had discussed with her in August.
Coley signed 
a new one-year contract with Baylor dated April 15, 1994, continuing her at the 
academic rank of “Assistant Professor” for the 1994-1995 academic year. Although all of Coley’s claims accrued prior to the 
1994-1995 academic year, none of the annual contracts governing prior years were 
introduced into evidence; the 1994-1995 contract does not govern Coley’s claims, 
but is at best representative of the prior annual contracts. Regardless, neither 
the 1994-1995 contract nor the 1981 letter granting 
Coley tenure contained any description of her position or responsibilities. The 
1994-1995 contract stated that the contract, a 
referenced attachment, and the Baylor University Personnel Policy Manual 
“contain the entire agreement between the faculty member and the University”. 
Neither the attachment nor the complete manual are in 
the record; the only portion of the manual regarding the terms of tenure is 
quoted above in pertinent part. 
In May, Coley 
told Brooks that she might need to take disability leave. Brooks passed her 
request on to Sharp, who wrote Coley that he would need a statement from her 
physician regarding her diagnosis and prognosis. In July, Coley replied that
 
the 
question is now moot. You will be pleased to learn that I am planning to take 
early retirement from Baylor, not because I have finally capitulated to the 
decade of constructive dismissal tactics and harassment I have suffered, 
culminating last year during my sabbatical in your letter of 28 April demoting 
me from my position as Librarian . . . that I 
had held for twenty-one years, and placing me on what amounts to punitive 
probation, but because I am to be married and live in Vancouver, British 
Columbia.
 
A few days 
later she wrote Brooks to formally request retirement:
 
You will appreciate that I have mixed emotions about leaving 
the ABL, which for the past twenty-two years has been the center of my 
professional and, indeed, much of my personal life. However, in view of the 
pressures and stress I have experienced over the past decade, especially since 
my sabbatical leave in 1993, I can only anticipate with relief a happy and 
productive future in my new situation and environment. I have always conducted 
myself in the best interests of the ABL, and the Library will always have a 
special place in my affection.
 
I am also ambivalent about severing my long association with 
Baylor 
University, which has 
treated me well in so many ways. I only regret that because I was denied 
promotion to the rank of Associate Professor, I am ineligible for Emeritus 
status.
 
                                                                          
* * *
 
Thank you for whatever role you may have played in making 
[arrangements for my retirement] possible. I should also like to acknowledge the 
other kindnesses you have shown me during your tenure as Director of 
ABL.
Nine months 
after she retired, in April 1995, Coley sued Baylor, Brooks, and Sharp. She 
alleged that the defendants
circumvented Coley’s rights and privileges as a tenured faculty member, 
and undertook to threaten, intimidate, and harass Coley in an effort to force 
her to leave her employment; and, finally, when she did not abandon her 
position, they effectively removed her from her faculty position through the 
guise of “redefinition” . . . . Ultimately, the unreasonable and 
harassing conduct of Defendants . . . did 
force Coley to take early retirement from the clerical position that she was 
forced to assume after her faculty and research position, with the academic 
rights attendant thereto, was redefined 
. . . .
 
This “‘defacto removal’ of [her] vested tenure rights”, she 
asserted, “constituted a material and substantial breach of the contractual rights conferred on Coley and other tenured 
faculty at Baylor 
University.”
At the close 
of the evidence, the trial court refused Coley’s requests that the jury be asked 
whether Baylor breached her tenure contract and that they be instructed
 
that if you find and believe from the evidence that the change 
in Betty Coley’s duties, as ordered by Baylor’s agents Dr. Roger Brooks and Dr. 
Avery Sharp, required Betty Coley to take a subordinate position, or one 
substantially different in its work and duties from the position for which she 
was tenured, then you should find that Betty Coley was constructively and 
wrongfully discharged from her tenured position.
 
Instead, the 
court gave the jury the following question and instruction on liability:
 
Did Baylor University constructively discharge Betty 
Coley?
 
An employee is considered to have been discharged when an 
employer makes conditions so intolerable that a reasonable person in the 
employee’s position would have felt compelled to resign.
 
The jury 
answered “no”. The trial court rendered judgment on the verdict for Baylor, and 
Coley appealed, but only as to Baylor.
The court of 
appeals rejected Coley’s contention that she was entitled to a jury question on 
breach of contract, noting that she “states in her brief that her theory [of 
recovery] is that Baylor breached her contract by constructively discharging 
her” and “agree[ing] with Baylor that the controlling 
issue is whether Baylor constructively discharged Coley.”[2] But the court held that the jury should 
have been given Coley’s requested instruction on constructive discharge.[3] That instruction, the court concluded, 
reflects “a correct statement of law with regard to an employer’s rights under 
an employment contract to modify an employee’s position”, and the trial court’s 
instruction did not.[4]
The court 
relied on our decision in Kramer v. Wolf Cigar Stores Co.[5] There, one Kramer agreed in writing “‘to 
faithfully and diligently act as general manager of the Dallas stores of the 
Union Cigar Stores Company, with headquarters at Dallas, performing such duties 
as are usually entailed upon a general manager under like circumstances’”.[6] Kramer agreed to the title “chief clerk” 
of Union Cigar’s only Dallas store, and when two smaller stores were 
added, he managed all three.[7] But when Union Cigar instructed him to 
move to the smallest of the three stores, which he believed could not serve as 
headquarters for the business, he refused and was discharged.[8] He sued for breach of contract, alleging 
that Union Cigar had in effect removed him as general manager and reduced him to 
little more than a tobacco salesman.[9] Union Cigar answered that Kramer had only 
been transferred, not demoted. We held that the evidence was “sufficient to 
present the issue whether or not the defendant broke the contract by requiring 
of plaintiff the performance of duties substantially different from those which 
he had agreed to perform”.[10] 
Like Kramer, 
Coley alleges that she was demoted in breach of her contract. But while there is 
evidence that her responsibilities were altered, there is no evidence that 
Baylor ever required her to perform any job other than Assistant Professor, the 
rank at which she was tenured and which was specified in her last annual 
contract. As previously noted, Coley did not introduce into evidence any 
contract with Baylor that specified her functions, either in its terms or with 
reference to any other materials. Nor does the 1981 letter granting her tenure 
specify her functions. Coley instead points to President Reynolds’s testimony 
that a tenured faculty member at Baylor would be entitled to continue to do the 
“general kinds of things” in his field that he was doing when he was given 
tenure. But there is no evidence that Coley did not continue to do the “general 
kinds of things” she had done when given tenure. Over the years, her work 
changed as she assumed for awhile, then relinquished, some of the duties of 
director, and then was assigned different duties as positions in the Library 
were redefined. Neither her tenure letter nor her 1994-1995 
academic year contract refer to her position as “Librarian”, and her new title, 
“Research Librarian”, was not significantly different. She agreed with 
Brooks that her assignments as “Research Librarian” were “very important” to the 
operation of the Library. Even if her work varied substantially over time and in 
the end was more clerical than she desired, there is no evidence that it was not 
the work of an Assistant Professor. On the contrary, the evidence establishes 
that, in the words of Baylor’s personnel policy manual, she “continue[d] in [her] academic position”.
Unlike 
Kramer, Coley also alleges another, different breach of contract: that she was 
constructively discharged — that is, that she was in effect terminated without 
due process by being forced to resign. This, too, would be a breach of her 
tenure contract, but it cannot be proved merely by a material change in job 
assignments. Rather, constructive discharge has recently been defined by the 
United States Supreme Court in Pennsylvania State Police v. Suders as “an employee’s reasonable decision to resign 
because of unendurable working conditions”.[11] Here, the trial court’s jury instruction 
was taken verbatim from PJC 107.10 of Texas Pattern Jury Charges, which 
is derived from the Suders opinion.[12] It correctly describes constructive 
discharge. Coley’s requested instruction confused two different breaches of an 
employment contract, one when the employee’s duties or responsibilities are 
changed in violation of a contract, and the other when intolerable working 
conditions force the employee to resign even though termination was not 
contractually permitted. In essence, the instruction would have told the jury 
that a material change in work assignments forces resignation. Not surprisingly, 
Coley offers no authority for this proposition. It is simply incorrect. The court of appeals’ conclusion that constructive discharge is 
differently defined, depending on whether employment is by contract or at-will, 
is based on a misreading of Kramer and is also incorrect.
The 
concurring opinion finds it unnecessary to address Coley’s argument that her 
requested instruction should have been given because, as Baylor contends, the 
instruction assumed a disputed fact and therefore was not worded substantially 
correctly.[13] The disputed fact was whether Coley had 
tenure in a field, such as library science, or in a particular 
position of employment, such as Librarian of the ABL. Baylor and the 
concurrence argue that because that fact was disputed, and because the requested 
instruction refers only to a tenured “position”, the requested instruction 
“assumed the truth of a material controverted fact”.[14] We disagree. This nearly imperceptible 
distinction between field and position, as related to this case, was but a speck 
of disagreement between the parties; the heart of the constructive discharge 
claim was whether Baylor’s change in Coley’s duties effectively forced her to 
resign. The main issue was what degree of change is necessary to prove 
constructive discharge: a move to “a subordinate position, or one substantially 
different in its work and duties”, as Coley requested the jury be instructed, or 
“conditions so intolerable that a reasonable person in the employee’s position 
would have felt compelled to resign”, as the court instructed the jury.
In rejecting 
the argument that Coley did not preserve error, the court of appeals quoted our 
statement in State Department of Highways & Public Transportation v. 
Payne:
 
There should be but one test for determining if a party has 
preserved error in the jury charge, and that is whether the party made the trial 
court aware of the complaint, timely and plainly, and obtained a ruling. The 
more specific requirements of the rules should be applied, while they remain, to 
serve rather than defeat this principle.[15]
 
Coley’s 
requested instruction presented the principal legal issue of constructive 
discharge squarely to the trial court, and the court resolved it. Nothing in 
Coley’s use of the word “position” rather than the word “field” misled the trial 
court or interfered in any way with its legal decision. Using either word, the 
instruction was wrong for purposes of Coley’s constructive discharge claim. 
Coley is entitled to have the trial court’s decision reviewed on appeal.
We need not 
decide whether there was any evidence Coley was constructively discharged to 
support submission of the issue to the jury since the jury answered the question 
“no”. There is no evidence that Baylor breached Coley’s employment contract. 
Accordingly, the judgment of the court of appeals is reversed and judgment is 
rendered that Coley take nothing.
 
                                                                                    

Nathan L. Hecht
Justice
Opinion 
delivered: April 20, 2007






[1] 147 S.W.3d 
567, 571 (Tex. App.–Waco 2004) (quoting Kramer v. Wolf Cigar Stores Co., 
91 S.W. 775, 777 (Tex. 1906)).

[2] 147 S.W.3d at 571

[3] Id.

[4] Id.

[5] 91 S.W. 775 (Tex. 1906).

[6] Id. at 
775.

[7] Id.

[8] Id.

[9] Id.

[10] Id.

[11] 542 U.S. 129, 141 
(2004).

[12] State Bar of Tex., Texas Pattern Jury 
Charges–Business, Consumer, Insurance & Employment PJC 107.10 & 
cmt. (2006).

[13] Post 
at ___.

[14] Post 
at ___.

[15] 838 S.W.2d 235, 241 (Tex. 
1992).